UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JOSEPH BRYAN ROBERTSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) 2:21-CV-00144-DCLC |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Joseph Bryan Robertson's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence [Doc. 1]. The United States responded in opposition to Robertson's motion [Doc. 6], and Robertson replied [Doc. 7]. This matter is now ripe for resolution. For the reasons that follow, Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence [Doc. 1] is **DENIED**.

I.     BACKGROUND

In March 2018, officers pulled Robertson over in a traffic stop [U.S. Dist. Ct. for the E.D. of Tenn., Case No. 2:18-CR-00054 (Crim. Dkt.), Plea Agreement, Doc. 248, ¶ 4(b)]. During that stop, officers found $1,027.00 in cash, a backpack with 70 grams of methamphetamine, 45 grams of marijuana, and drug paraphernalia [Crim. Dkt., Doc. 248, ¶ 4(b)]. Robertson admitted possessing ten grams of methamphetamine but denied owning everything else [*Id.*, ¶ 4(c)]. He also admitted selling approximately a pound of methamphetamine every week for about eight months [*Id.*, ¶ 4(g)]. Subsequently, Zachary Hileman reported that Robertson and others held him captive, beat him, and abandoned him [*Id.*, ¶ 4(f)]. Robertson admitted assaulting two people, including Hileman, because they owed him money related to his drug sales [*Id.*, ¶ 4(h)].

A federal grand jury charged Robertson, along with others, in a Superseding Indictment [Crim. Dkt., Doc. 18] with conspiring to distribute and possess with intent to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), (Count 1), possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), (Count 2), aiding and abetting possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 922(c)(1)(A), (Count 3), and possession of a firearm as a convicted felon in violation 18 U.S.C. § 922(g)(1) (Counts 4 and 5) [*Id.*, pgs. 1-8].

In May 2019, Robertson signed a plea agreement, agreeing to plead guilty to conspiring to distribute and possess with intent to distribute at least 50 grams of methamphetamine [Crim. Dkt., Doc. 248]. Robertson later pleaded guilty, and the Court accepted his guilty plea as knowingly and voluntarily entered [Crim. Dkt., Doc. 706, pg. 18]. During his plea colloquy, Robertson confirmed that he discussed the charges with his attorney, believed that his attorney was "fully aware of all the facts upon which [the] charges [were] based," and that he was satisfied with his attorney's advice and representation [*Id.*, pg. 6]. Robertson also confirmed that no one pressured him to plead guilty and that no one "promised or suggested that [he] [would] receive a lighter sentence . . . if [he] pleaded guilty." [*Id.*, pg. 8]. Additionally, the Court warned Robertson that it would consider the applicable sentencing guidelines and that his sentence may be enhanced or increased [*Id.*, pg. 14]. Robertson confirmed that he understood the government was not recommending a particular sentence and that his sentence would be determined solely by the Court, after it considered the applicable guidelines, the presentence report, and other relevant information [*Id.*, pg. 16].

The Presentence Report determined Robertson's base offense level was 34 based on a drug quantity of between 500 grams but less than 1.5 kilograms of methamphetamine [Crim. Dkt., Doc. 457, ¶ 39]. It applied a two-level enhancement for possessing firearms under U.S.S.G. § 2D1.1(b)(1), a two-level enhancement for using or directing violence under § 2D1.1(b)(2), a two-level enhancement for physically restraining a victim, that being Hileman, under § 3A1.3, a four-level leadership-role enhancement under § 3B1.1(a), and reduced the offense level by three-levels for acceptance of responsibility, resulting in a total offense level of 41 [*Id.*, ¶¶ 39-49; Crim. Dkt., Doc. 699, pg. 1]. Robertson's criminal history category was III, with four criminal history points [Crim. Dkt., Doc. 457, ¶ 59]. A total offense level of 41 and criminal history category III yielded a guideline range of 360 months to life imprisonment [*Id.*, ¶ 84].

Robertson's counsel filed four objections to the PSR. First, he objected to the enhancement under § 2D1.1(b)(1) for possessing a dangerous weapon [Crim. Dkt. Doc. 641]. Second, he objected to the two-level increase for using violence, making credible threats of violence, or directing the use of violence pursuant to § 2D1.1(b)(2). Third, he objected to the application of the enhancement under § 3A1.3 for physically restraining Hileman. Lastly, he objected to the four-level increase for directing the criminal activities of others under § 3B1.1(a).

At sentencing, the government addressed Robertson's first objection by noting Robertson admitted in his plea agreement that law enforcement had recovered two Taurus Model PT111 Millennium G2 pistols that he possessed and obtained from co-defendant Kenneth Chambers [Crim. Dkt., Doc. 707, pg. 5]. It also argued that Robertson admitted to using a "yardstick-style device" to beat Hileman across his head. It noted that the application of this enhancement was not limited to firearms but included any devices that could cause serious bodily injury, such as what Robertson admitted he used to strike Hileman.

On the second objection regarding Robertson's use of violence, the government noted that Robertson admitted in paragraph 4(f) of the plea agreement that "at some point [Phillip] Robinson sold Defendant some 'bad dope' for $1,900 and Defendant held Hileman responsible." [Crim. Dkt., Doc. 248, ¶ 4(f)]. The plea agreement further explained that "[a]s a result, Hileman was held captive by Defendant at David Murr's garage, where he was beaten by Defendant and other members of the organization. Hileman was eventually taken from the house in the back of a pickup truck and abandoned in a field." [*Id.*]. The plea agreement also stated that Robertson admitted that "he had assaulted two individuals due to the fact that they owed him money related to drug debts." [*Id.*, ¶ 4(h)]. The government also highlighted paragraph 4(i) in which Robertson admitted to "assaulting James Hassett in November 2017" because Hassett had stolen some money and methamphetamine from Robertson and assaulting Hileman in February 2018 because Hileman "owed a drug debt and had stolen from a member of the organization." [*Id.*, ¶ 4(i)]. With respect to the restraint of a victim enhancement under § 3A1.3, the government noted that Robertson admitted in his plea agreement that he held Hileman "captive" in David Murr's garage. [*Id.*, ¶ 4(f); Crim. Dkt., Doc. 707, pg. 16].

The government also called Special Agent John Bulla with the Department of Homeland Security. He testified at the hearing that Robertson was stopped by local law enforcement officers who found him in possession of methamphetamine and discovered a shoulder holster "made to carry a pistol on each shoulder . . . ." [Crim. Dkt., Doc. 707, pg. 18]. During Agent Bulla's interview of Robertson, Robertson admitted he had firearms in the room he was renting on Garrison Hollow Road. [*Id.*, pg. 18]. Agent Bulla testified once Robertson consented to a search of his room, officers searched the room and found two shotguns, two rifles, and a .22 caliber firearm. When Agent Bulla asked Robertson about possessing matching 9 millimeter semi-

4

automatic firearms, Robertson claimed he had given those to "Little Bro," later identified as Thomas Markland, to store for him. Robertson then directed officers to Markland's residence where they interviewed Markland. Markland confirmed that Robertson had brought the firearms to his house, and he turned those firearms over to the officers [*Id.*, pg. 18-19]. Agent Bulla noted that the two firearms would fit in the holster found in Robertson's vehicle.

Agent Bulla testified he had interviewed Hileman, who claimed that Robertson struck him over the head with a piece of wood. Hileman told Agent Bulla that Robertson had struck him in the head with a two by four, placed him on the ground, and wrapped him in plastic, preventing him from moving. [*Id.*, pg. 26-27]. Robertson admitted to Agent Bulla he had assaulted Hileman [*Id.*, pg. 27]. He also interviewed co-defendant Elizabeth Waters who said she witnessed Robertson "come into the room with a firearm and threaten to shoot [Mr. Hassett]." [*Id.*, pg. 21]. Agent Bulla summarized his interview with Ciara Ward, who stated that she had been taken to Robertson's residence when she was accused of stealing. Robertson directed other "females that lived with him . . . to beat her." [*Id.*, pg. 22]. According to Agent Bulla, "she was assaulted, [and] her hair was cut off by the females." She told Agent Bulla that Robertson put her in the back of a truck and drove her around throughout the night and would not let her leave. He then took her back to his residence where he sexually assaulted her and threatened to "put her out for prostitution." [*Id.*, pgs. 22-23]. Robertson admitted to Agent Bulla he was involved with the assault on Ward. Agent Bulla also recounted the stories regarding the assault of Mr. Hassett. Hassett was also taken to Robertson's residence where he was beaten and tied to a pole. Agent Bulla noted that Robertson admitted that he struck Hassett as well. And, when asked about this assault, Robertson admitted to this as well. [*Id.*, pg. 28].

After Agent Bulla testified, Robertson elected to take the witness stand to testify on his objections to the PSR [*Id.*, pg. 64]. He testified that while he possessed the two firearms referenced in the PSR, he only possessed them "for less than a week." [*Id.*, pg. 67]. He denied threatening Hileman as well [*Id.*, pg. 70]. Robertson later agreed that he "hit him with a one by four . . . not even a one by four, it was like a three-quarter . . . and I hit him one time . . . and it didn't even draw blood . . . ." [*Id.*, pg. 72]. He denied that Hileman was ever restrained in Murr's garage [*Id.*, pg. 76]. He denied ever using the shoulder holster [*Id.*, pg. 85]. He also admitted to hitting Hassett "one time with my open hand, not even a balled-up fist, but an open hand when I was going out, hardly enough to make whelps on him . . . ." [*Id.*, pg. 86]. He also denied assaulting Ward [*Id.*, pg. 90]. Robertson also complained of receiving a two-level enhancement for violence, explaining that, "I just think that assault . . . I think of it as a beating where you're assaulted . . . whereas a slap aside of the head, that's not . . . worth two points to me." [*Id.*, pg. 99].

After the evidentiary hearing, the Court found the firearm enhancement under § 2D1.1(b)(1) applied [*Id.*, pg. 152-53]. The Court found Robertson's testimony to the contrary as incredible. [*Id.*, pg. 154]. On the violence enhancement under § 2D1.1(b)(2), the Court found that Robertson's own testimony that he struck and assaulted others supported the application of the enhancement. The Court also sustained the application of the enhancement for restraining a victim under § 3A1.3 as Robertson admitted he held "captive" a victim. However, the Court sustained Robinson's objection on the four-level enhancement for a leadership role, finding instead that Robertson was only a manager and not a leader [*Id.*, pg. 163]. This resulted in only a three-level enhancement and not a four-level enhancement under § 3B1.1. Accordingly, the Court found Robertson's offense level was 40, criminal history category III, and resulting guideline range of 360 months to life imprisonment. [*Id.*, pg. 164].

Robertson admitted that his counsel raised all the objections to the presentence report that he wanted raised [*Id.*, pg. 3]. Robertson's counsel also argued for a sentence within a 135-to-168-month guideline range [Crim. Dkt., Doc. 606, pg. 1]. The Court recognized Robertson's counsel was "doing a really good job" multiple times throughout the sentencing hearing [Crim. Dkt., Doc. 707, pgs. 15, 174]. Ultimately, the Court varied downward and sentenced Robertson to 324 months imprisonment [*Id.*, pg. 179]. Robertson appealed the applicability of his guideline enhancements, but the Sixth Circuit dismissed his appeal based on the appeal waiver in his plea agreement [Crim. Dkt., Doc. 735].

In his present motion to vacate, Robertson claims his counsel was ineffective [Doc. 1, pg. 4]. Specifically, he contends that his attorney provided him ineffective assistance by failing to file a motion to suppress regarding his 2018 traffic stop and failing to inform him of the length of imprisonment that he faced by pleading guilty [*Id.*, pg. 13]. As to his counsel's failure to file a motion to suppress, Robertson explains that he told his attorney that the stop was "illegal and coercive." [*Id.*]. Next, Robertson argues that his attorney did not tell him that he faced a sentence of 360 months to life imprisonment by pleading guilty [*Id.*]. He claims that his attorney "unequivocally" told him that he secured a guilty plea "for around 135 months" and that "he would definitely receive a life sentence" if he did not accept the guilty plea [*Id.*]. Robertson states that, had he known the correct guideline range he faced, he would have gone to trial rather than plead guilty [*Id.*, pgs. 13-14]. He asserts that his counsel failed to anticipate "10 levels of enhancements" [*Id.*, pg. 14].

In support of his motion, Robertson attaches his own affidavit in which he swears that his counsel told him that he would receive a sentence of less than 15 years by pleading guilty and that he would have gone to trial otherwise [*Id.*, pgs. 18-19]. He also explains that he did not raise this

7

issue with the Court earlier because he did not learn of his counsel's purportedly ineffective assistance until he was released to the Bureau of Prisons' custody [*Id.*, pg. 18].

The government responds that Robertson has not satisfied the two-part test under *Strickland v. Washington*, 466 U.S. 668 (1984) [Doc. 6, pg. 4]. It states that Robertson has not established a basis for his counsel to have filed a motion to suppress the 2018 traffic stop [*Id.*]. The government also notes that, even if the traffic stop violated Robertson's Fourth Amendment rights, "suppression is not an automatic consequence of a Fourth Amendment violation." [*Id.*, pgs. 4-5]. Next, the government argues that Robertson was not prejudiced by his counsel's failure to anticipate his guideline enhancements because he was correctly advised of his sentencing exposure during his plea colloquy [*Id.*, pg. 5]. It notes that the Court informed Robertson that an appropriate sentence could not be determined until after the presentence report was filed [*Id.*, pg. 6]. The government states that Robertson's counsel correctly told him that, if he went to trial, he could receive a life sentence because he would not have received a three-level offense level reduction for acceptance of responsibility that accompanies a guilty plea [*Id.*, pg. 7]. It notes that Robertson's plea colloquy shows that he was not promised a particular sentence, was not induced to plead guilty, and pleaded guilty because was he was, in fact, guilty [*Id.*, pg. 8].

Robertson replies, largely reiterating the arguments from his motion to vacate [Doc. 7]. He explains that it "would have been rational for him to go to trial" because he would face the same consequences but would not have admitted to uncharged drug quantities and violent conduct that was used to enhance his guidelines range [*Id.*, pgs. 3-4].

II. ANALYSIS

Under 28 U.S.C. § 2255, a petitioner may move a federal court to vacate, set aside, or correct his sentence if the sentence was imposed in "violation of the Constitution or laws of the

United States, . . . the [sentencing] court was without jurisdiction to impose such sentence, . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). That statute, however, does not authorize relief for all errors at conviction and sentencing. *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

To obtain relief, a petitioner must show: (1) an error of constitutional magnitude; (2) a sentence outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). A petitioner "must clear a significantly higher hurdle than would exist on direct appeal" and show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (internal quotations omitted). Moreover, any claim raised for the first time on collateral review is procedurally defaulted. *Bousley v. United States*, 523 U.S. 614, 621 (1998).

Under Rule 4 of the Governing Rules, the Court considers initially whether the fact of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4. "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (citations omitted).

"To prevail on an ineffective assistance of counsel claim, a defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense." *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013); *see also Strickland*, 466 U.S. at 687. Because both prongs must be satisfied to establish ineffective assistance, if a petitioner cannot satisfy one prong, the other need not be considered. *Strickland*, 466 U.S. at 697. The *Strickland*

9

standard is altered, "however, when dealing with a situation where a defendant enters a guilty plea instead of being found guilty after a trial. In the context of guilty pleas, the first element, the 'performance' aspect, of the Strickland test remains the same but the second element, the 'prejudice' requirement, changes." *Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987). To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Under the first prong, there must be evidence that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687). As to the second "prejudice" prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). The petitioner must establish counsel's constitutionally defective performance by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A criminal defendant who has entered a plea of guilty in open court may not later raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973); *United States v. Broce*, 488 U.S. 563, 569 (1989); *see also United States v. Turner*, 272 F.3d 380, 389–90 (6th Cir. 2001); *United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001); *Flowers v. United States*, 208 F.3d 213, *3–*4 (6th Cir. 2000) (unpublished); *Kotsonis v. United States*, No. 17-5099, 2017 WL 7310633, at *2 (6th Cir. Sep. 12, 2017). The Supreme Court has stated that the "focus of federal habeas inquiry [, when a defendant pleads guilty,] is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Tollett*, 411 U.S.

at 266.  Further, "non-constitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  "Accordingly, non-constitutional errors ordinarily are not cognizable on collateral review." *Id.*  "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Id.*

Here, Robertson's claim of ineffective assistance of counsel relies, in part, on his counsel's alleged failure to file a motion to suppress the 2018 traffic stop that led to his arrest and subsequent guilty plea. [Doc. 1, pg. 13].  Robertson asserts that the stop was "illegal and coercive," presumably violating his Fourth Amendment rights. [*Id.*].  His guilty plea, however, waives any independent, constitutional claims that may have occurred prior to the entry of his plea. *See Tollett*, 411 U.S. at 266–67; *Broce*, 488 U.S. at 569; *Turner*, 272 F.3d at 389–90.  Indeed, the Court can focus only on "the nature of the advice and the voluntariness of the plea" in this context, but Robertson does not challenge the validity of his guilty plea. *Tollett*, 411 U.S. at 266; [Doc. 1, pg. 13].  Moreover, Robertson provides no facts that suggest the stop was illegal.  He has not identified any legitimate basis on which his counsel should have challenged the stop.  *See Howard v. Bouchard*, 405 F.3d 459, 481 (6th Cir. 2005) ("Howard cannot establish prejudice under *Strickland*, because he cannot show that a motion to [suppress] would have succeeded.").  Thus, his Motion to Vacate is **DENIED** in this respect.

Next, Robertson's claim of ineffective assistance of counsel also relies on his counsel's failure to anticipate the guideline enhancements that he would receive and his counsel's alleged failure to advise him of the accurate guideline range of imprisonment he faced. [Doc. 1, pgs. 13-14].  That claim, however, does not identify an error of constitutional magnitude, a sentence outside the statutory limits, or an error of fact or law that would render the entire proceeding

11

invalid. *Moss*, 323 F.3d at 454. It is axiomatic that 28 U.S.C. § 2255 does not authorize relief for all errors at sentencing. *Addonizio*, 442 U.S. at 185; *see also Grant*, 72 F.3d at 506. Therefore, Robertson's assertions regarding his counsel's alleged sentencing errors and inaccurate advice are not cognizable under § 2255. Moreover, his counsel challenged the basis for the application of the sentencing enhancements, and Robertson even testified at the hearing that his counsel raised all the objections to the Presentence Report that he wanted raised. [Crim. Dkt., Doc. 707, pg. 3]. Robertson's counsel cannot be criticized for doing exactly what Robertson requested.

To be sure, Robertson's own testimony during his plea colloquy and sentencing hearing undercut his claims. During his plea colloquy, Robertson confirmed that: (1) he was satisfied with his counsel's representation; (2) no one pressured him to plead guilty; and (3) no one "promised or suggested that [he] [would] receive a lighter sentence . . . if [he] pleaded guilty." [Crim. Dkt., Doc. 706, pgs. 6, 8]. Further, the Court warned Robertson that it would determine his sentence after considering the applicable guidelines, which could enhance his sentence. [*Id.*, pg. 14]. Robertson also confirmed that he understood that the Court alone would determine his sentence after considering all relevant information. [*Id.*, pg. 16].

Additionally, Robertson claims that his counsel assured him he would receive a sentence no greater than 15 years. However, that argument is also undercut by the plea colloquy in which the Court asked if he had been promised a particular sentence or if anyone induced him to pled guilty by making promises of a lighter sentence. In fact, Robertson was specifically advised he was facing a maximum of life in prison by virtue of his guilty plea.

Finally, the Court went so far as to recognize that Robertson's counsel was "doing a really good job" throughout the hearing. [Crim. Dkt., Doc. 707, pgs. 15, 174]. Robertson's counsel's performance resulted in the Court varying downward and sentencing Robertson to 324 months

12

imprisonment, three years below Robertson's guideline range. [*Id.*, pg. 179]. Thus, Robertson's Motion to Vacate is **DENIED** in this respect.

### III. CONCLUSION

For the reasons stated herein, Robertson's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence [Doc. 1] is **DENIED**.

When considering a § 2255 motion, this Court must "issue or deny a certificate of appealability [(COA)] when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Robertson must obtain a COA before he may appeal the denial of his § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. Based on the *Slack* criteria, the Court finds that a COA should not issue in this cause.

A separate judgment shall enter.

**SO ORDERED**:

s/ Clifton L. Corker<br>
United States District Court

13

Case 2:21-cv-00144-DCLC-CRW   Document 8   Filed 02/01/22   Page 13 of 13   PageID #: 57